TROTWOOD MADISON CLASSROOM TEACHERS ASSN., APPELLANT,
v. TROTWOOD MADISON CITY SCHOOL DIST. BD. OF EDUCATION,
APPELLEE.

(No. 5424—Decided May 4, 1977.)

*Mr. James R. Kirkland* and *Mr. Carmine Garofalo,*
for appellant.

*Messrs. Young, Prior, Lynn, Falke & Jerardi* and *Mr.
Larry A. Smith,* for appellee.

McBRIDE, J. This action was initiated by the Trotwood
Madison Teachers Association against the board of educa-
tion for a mandatory injunction and declaratory judgment
seeking to enforce provisions (1) for an advisory board
provided in a recognition and negotiating understanding
and (2) for grievance procedure in a separate contract en-
tered into by the board of education with its employees. The
board responded with several defenses; however, the chief
defense asserted that the provision for an advisory board
in the preliminary understanding was withdrawn, as ex-
pressly authorized, and that grievance provisions in the
old contract, if still effective, were not applicable to any-
thing not within the terms of the executed contract.

The hearing began on the motion for a preliminary in-
junction and was interrupted when the parties stipulated
the facts that appear in an unsigned five page record filed

December 8, 1976. The record narrowly confines the facts to the two questions asserted by the complainant and denied by the defendant.

The trial judge found that the board had a legal right under Article I, Paragraph 5, of the original understanding "to do what it is alleged to have done," that is, withdraw the use of an advisory board during negotiations, and that complainant had no cause of action. Injunctions were denied and the complaint was dismissed. The court incorporated the stipulations of the parties as its finding of facts. It did not expressly rule on the question of the use of the compulsory grievance procedure in the former contract to compel the use of an advisory board in negotiations for a new contract; however, in view of the finding and judgment it must be assumed that this was also denied.

The complainants appealed asserting two grounds of error:

1. The denial of plaintiff's prayer for injunctive relief and the dismissal of the complaint;

2. The dismissal of the complaint without ruling on plaintiff's request for declaratory relief and without making findings as to defendant's failure to comply with grievance procedure.

There is in this case an overdose of mixed rhetoric, the clarification of which assists in understanding the problem. The parties are a board of education and a teachers association. In January of 1976, they began negotiations on a new contract of employment for those involved. Their negotiations in the first stage of reaching a contract were guided by a recognition and policy understanding which outlined the "negotiation policy" to be followed in negotiating a new agreement.

This initial process in educational relations may have an historical origin because the recognition of a union and a method for reaching an agreement within the context of the law in this virginal field of public labor relations presented handicaps. Private corporations and individuals have no problems, but how, when and if a public agency enters a contract, in the absence of legislation, is a unique assignment that is often expressed by initial undertakings

by boards and public authorities to indicate how and under what conditions it will enter into negotiations leading to a legal contract.

The distinction is clear in *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio State 2d 127, which involved a final *negotiated* contract into which the board and the association had entered, including binding arbitration. At issue in that case were grievances concerning the terms and working conditions of the individual members of the association under the existing contract. The court had before it a case where the board had *entered into an executed,* binding contract. The only issue was whether the executed contract was lawful and could be enforced. This stage was not reached in the instant case.

The first stage involves the authority of and methods used by the board in carrying out its public responsibility when it seeks to *enter into* such a contract. Unions have entered into this area of administration probably because recognition as a bargaining agent is the first step in its position. Naturally, they sought the best possible position, which involves the imposition of restrictions on the authority of such boards to enter into contracts such as was executed in the *Teachers Assn.* case. This involvement by unions in the authority and procedure of school boards to *enter into* a pact with its teachers is represented by some form of understanding of preliminary negotiating procedures or policies which hopefully will eventually lead to an executed contract for the employees. The cases suggest that where such preliminary "policies" are accepted, boards have been cautious in varying degrees to protect their right to control the acceptance or rejection of contracts. While a board may accept a contract containing compulsory arbitration of grievances under its terms, there has not yet appeared any authority for the creation of a contract by compulsory arbitration. Indeed, the initiation of a contract by compulsion is foreign to any understanding of contract law.

With this preliminary background, it is apparent that the preliminary "negotiating policy" provided for the eventual creation of an advisory board for arbitration where an agreement upon a contract had not been reached.

*The board was required to consider its recommendations but was not bound to accept it.* (Article IV, Paragraph II.) In addition, in Article I, Paragraph 5, there appears a reservation of authority, as follows:

"If, however, in the judgment of the Board of Education the [negotiating] procedure so established is not functional or the purpose of the procedure has been frustrated, the Board maintains its right to alter, revise or discontinue the procedure, or take such other action as it feels will be in the best interest of the educational enterprise [in negotiating or accepting a contract]."

After some negotiations, the board on, February 11, 1976, by resolution discontinued the negotiating procedure pursuant to its authority under Article I, Paragraph 5.

The last executed employee contract contained a provision for the compulsory arbitration of grievances involving *negotiated policies entered into and agreed by* the board and the teachers. In March, the association itself presented a *grievance* and demanded *compulsory* arbitration against the board, based upon its discontinuance of the above portion of the negotiation policy. The demand of the association for a *compulsory* review panel under the executed contract was ignored and resulted in the present lawsuit. In April 1976, the board indicated that the matter alleged in the notice was not "grievable."

The position of the board is (1) that its discontinuance action was expressly authorized in the preliminary recognition and negotiating policy statement and (2) that a grievance could only relate to matters "negotiated and agreed to" in an executed contract and had no application to recognition and negotiating procedures designed to facilitate an entry into such contracts. We agree with this construction. Compulsory arbitration in an executed contract cannot be extended beyond its terms or enlarged to encompass procedures for the entry into a new contract. This is simple contract law. We agree with the conclusion of the trial court that the association cannot unilaterally transfer the provision for grievance and compulsory arbitration from an *executed* contract into the generic guides for reaching a new contract.

It may also be added that while a board of education may enter into agreements for compulsory arbitration, there is a serious doubt whether it may abandon its right or authority to enter into a new contract. Arbitration is a convenient method to resolve disputes under existing contracts; however, in the absence of an acceptance by the board, compulsory arbitration is not a legally approved method of imposing the compulsory acceptance of a new contract upon a public authority responsible for limited public funds.

The instant problem is clearly stated in the syllabus in *Dayton Teachers Assn.* v. *Dayton Bd. of Edn., supra*:

"1. A board of education is vested *with discretionary authority to negotiate* and to enter into a collective bargaining agreement with its employees, so long as * * *

"2. A binding grievance arbitration clause contained in *such* agreement must be honored by the board of education where (1) the grievance involves the application or interpretation of a *valid term of the agreement* and (2) * * *." (Emphasis added.)

The above syllabus affirms the exclusive discretionary authority of the board in negotiations. In paragraph two, the grievance procedure is limited to valid terms of the agreement reached with its employees. The word *term* is used to refer to the subject matter of the contract ultimately entered into, as appears in the facts, and not to the duration or renewal of the contract.

It is apparent from the narrow legal issues presented that complainant is not entitled to equitable relief to control, in any manner, the discretionary authority vested in the board of education to enter into contracts. To attempt to do so by contract would be illegal; however, in the instant case the board expressly did not abrogate its duties and responsibilities as to the contracts when it reserved, in Article I, Paragraph 5, the right to negotiate, but not necessarily through an advisory board. Appellant concedes, by it reference to the *Teachers Assn.* case, *supra,* that parties ordinarily *are not bound* to contract; however, once they voluntarily do so, it is not extraordinary for them to be bound by equitable principles.

There is no merit in the first assignment.

The second assignment relates to the board's failure to comply with the compulsory grievance procedure set forth in the last collective bargaining contract entered into with the employees. It is not clear from the record when that contract expired. If it lapsed it was of no effect; however, assuming that it had not, the complainant is confined to such rights or, to use the Supreme Court's words, the *valid terms* of the contract entered into with the employees. The rights that complainant asserts do not appear in the employee's contract entered into by the board. The use of an advisory board, subject to the expressly reserved discretion of the board of education, appears in the preliminary recognition and negotiating understanding. Complainant asks the court to incorporate the preliminary policy statement into the actual agreement and thus impose compulsory arbitration upon the discretionary authority of the board of education by way of a grievance procedure. This, the court may not do and we do not believe the board of education itself may abandon its discretionary authority to enter into agreements with employees. In the instant case, the board expressly reserved and exercised that authority so the latter issue does not arise.

There is no merit to the second assignment of error that the board was bound by a grievance procedure as to a subject matter relating to its discretion and which was not included in the terms of a former contract entered into with its employees.

The appellants were not entitled to the equitable relief sought or to the declaration of such rights as they requested. While the entry in the trial court may lack definiteness, the conclusion is correct that the complainant was not entitled to the relief or to the declaration it sought.

*Judgment affirmed.*

SHERER, P. J., and STEPHENSON, J., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting by designation in the Second Appellate District.